JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Marcus Bishop, appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a jury verdict, finding him guilty of drug trafficking and possession of criminal tools. Finding no merit to appellant's appeal, we affirm.
 {¶ 2} On July 26, 2001, the Cuyahoga County Grand Jury returned a four-count indictment against appellant for possession of drugs, in violation of R.C. 2925.11; preparation of drugs for sale, in violation of R.C. 2925.03; trafficking in cocaine, in violation of R.C. 2925.03; and possession of criminal tools (money), in violation of R.C. 2923.24. Appellant pled not guilty to the charges. Prior to trial, the State dismissed counts one and two of the indictment.
 {¶ 3} Two witnesses testified for the State at trial. Cleveland police officer Timothy Williams testified that at approximately 3:40 p.m. on June 29, 2001, he was conducting surveillance in the area of East 117th and St. Clair in the City of Cleveland in response to numerous complaints regarding drug activity in the area. According to Williams, as he hid behind a tree, he observed appellant and approximately five or six other young men milling around. Williams testified that appellant "stood out" from the other young men because he was taller than everyone else. Williams testified further that he observed appellant flag down several vehicles. According to Williams, when the vehicles would stop, appellant "would hop in the vehicles, make gestures, and then he would get out of the vehicle with money." Williams testified that after he saw appellant exit a maroon Nissan Maxima, he radioed the police officers who were waiting in a zone car several streets away. He gave the officers a description of the vehicle involved in the transaction and then told them that based on his previous experience in the neighborhood, he thought the seller was Marcus Bishop. Williams described appellant to the officers as "a black male about six one, two hundred pounds, white tee shirt, faded blue jeans."
 {¶ 4} Cleveland police officer Robert Martin testified that he was one of the officers waiting in the zone car while Williams conducted surveillance. According to Martin, Williams radioed that he had observed appellant make a drug transaction with the driver of a maroon Nissan Maxima, who was now headed their way. After the Maxima passed them, Martin and his partner followed the car and then pulled it over.
 {¶ 5} Martin testified that he told the driver of the car that a police officer had seen him making a drug transaction. The driver, Wayne McElrath, gave Martin consent to search his car. When Martin frisked McElrath prior to the search, he found a rock of crack cocaine in the breast pocket of his shirt. According to Martin, when he asked McElrath who he had purchased the cocaine from, McElrath told him that he did not know the seller's name, but then told him that the seller was at 117th and St. Clair and described what he was wearing.
 {¶ 6} The officers then drove to 117th and St. Clair, where they found appellant, wearing clothing matching the descriptions given by Williams and McElrath, standing in the street with several other males. The officers patted him down and found $210, but no drugs, on his person. Martin testified that appellant did not run away when the officers approached him and, further, that he did not see appellant put anything in his mouth or throw anything down when the officers approached.
 {¶ 7} Both Williams and Martin testified that it is not uncommon for drug dealers not to have drugs on them when they are apprehended. According to Williams, the dealers "learned from experience that if you get caught with the drugs, then you immediately go to jail." Finally, both Williams and Martin denied that they were part of a conspiracy to frame appellant.
 {¶ 8} Wayne McElrath testified for the defense. McElrath admitted that he bought a "dime" of crack cocaine for $10 from someone at 117th and St. Clair on June 29, 2001, but testified that he did not know the seller's name. McElrath described the seller as a "short, light-skinned African American."
 {¶ 9} McElrath testified that appellant was not the individual who had sold him drugs on June 29, 2001 and, further, that appellant was not one of the individuals out on the street when he bought the cocaine. McElrath denied that he told the police that he had purchased the cocaine from appellant and further, denied describing his clothing to them.
 {¶ 10} According to McElrath, after the police stopped his maroon Nissan Maxima and discovered the cocaine, the officers placed him in the back of a squad car with appellant, who McElrath had never seen before. As they sat in the police car, appellant informed McElrath that the officers had told him that McElrath had stated that appellant had sold him the cocaine. McElrath testified that appellant asked him why he told the officers something that was not true, especially when he had never met him before. According to McElrath, after he and appellant were put in a holding cell at the jail, he told Officer Martin that appellant was "not the guy" and that he did not know him, but Martin ignored him.
 {¶ 11} On rebuttal, Martin testified that McElrath never told him that appellant was not the person from whom he had purchased the cocaine.
 {¶ 12} The jury found appellant guilty of both counts and the trial court subsequently sentenced him to one year of community control. Appellant timely appealed, asserting that his conviction was against the manifest weight of the evidence.
 {¶ 13} A manifest weight of the evidence argument involves determining whether there exists a greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Weight is not a matter of mathematics, but depends on its effect in inducing belief. Id.
 {¶ 14} When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra, citing State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} Appellant asserts that his conviction was against the manifest weight of the evidence because the evidence produced by the State at trial was contradicted by the testimony of Wayne McElrath. Specifically, appellant contends that contrary to Martin's testimony, McElrath denied telling the police that he had purchased cocaine from appellant and denied describing appellant's clothing to them. In fact, appellant contends, McElrath testified that he had never seen appellant prior to being placed in the back of a squad car with him on June 29, 2001. In addition, appellant asserts that McElrath's description of the seller as a "short, light-skinned African American" contradicted Williams' description of appellant as a tall black male.
 {¶ 16} Appellant also contends that the evidence offered by the State at trial was circumstantial and insufficient to prove beyond a reasonable doubt that he sold drugs to McElrath or that the money found on his person was a criminal tool. Specifically, appellant asserts that neither Williams nor Martin testified that they actually saw an exchange of drugs for money; Williams testified only that he saw appellant get in McElrath's car and exit it a few minutes later. Therefore, appellant contends, there was insufficient evidence that he was involved in any drug transaction. In addition, appellant asserts that Williams' radioed statement to the officers in the zone car that he "believe[d] that the seller was Marcus Bishop" (emphasis added) "hardly constitutes a positive identification." Finally, appellant contends that there was insufficient evidence that he was trafficking in drugs because the police did not find any drugs on his person when they apprehended him.
 {¶ 17} It is true that the conflicting testimony of the police officers and McElrath required the jury's resolution. It is within the purview of the factfinder, however, to believe part or all of any testimony it hears. Furthermore, it is well established that the weight to be given the evidence and the credibility of the witnesses are for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.3d 230, paragraph one of the syllabus. We, as a reviewing court, must only consider whether the evidence and any reasonable inferences therefrom can support the verdict. In so doing, we consider the credibility of the witnesses and whether the factfinder lost its way in resolving conflicts in the evidence. State v. Jones (Mar. 21, 2001), Cuyahoga App. No. 80007, citing State v. Jordan (Feb. 14, 2002), Cuyahoga App. Nos. 79469 and 79470.
 {¶ 18} Here, the jury apparently found the State's witnesses to be more credible than McElrath and, consequently, resolved the conflicts in the evidence in favor of the State. We find nothing in the record that would cause us to dispute the jury's finding.
 {¶ 19} Moreover, the fact that much of the evidence against appellant was circumstantial does not make it ineffectual. As set forth by the Supreme Court of Ohio in State v. Jenks (1991), 61 Ohio St.3d 259,272, circumstantial evidence possesses the same probative value as direct evidence. "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." Id.
 {¶ 20} Here, the jury weighed the evidence and found appellant guilty beyond a reasonable doubt. The evidence they considered indicated that appellant was observed making a drug transaction with the driver of a maroon Nissan Maxima. When police officers stopped the Maxima, the driver admitted that he had just purchased a rock of crack cocaine — which the officers found in his shirt pocket — and then told the officers where the drug seller was and what he was wearing. When the officers went to that location, they found appellant, wearing clothing that matched the descriptions given by the police officer who had observed the drug transaction and the buyer, and carrying $210 in his pocket. Although the police did not find any drugs on appellant's person, the evidence indicated that it is common for the police not to find drugs on drug dealers when they are apprehended.
 {¶ 21} In light of this evidence, the jury could have reasonably concluded that appellant was the individual who sold McElrath the cocaine and that at least some of the money found in his pocket was from that sale. Thus, it cannot be said that the jury lost its way or created such a miscarriage of justice that appellant's conviction must be reversed.
 {¶ 22} Appellant's assignment of error is not well taken and, therefore, is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. AND TERRENCE O'DONNELL, J. CONCUR.